**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MANITH VILAYHONG, #M17024,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 19-cv-00748-SMY |
| | ) |
| **BENERIO SANTOS** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court for consideration of Plaintiff Manith Vilayhong's Motion for Temporary Restraining Order ("TRO Motion") filed October 24, 2019. (Doc. 55). Pursuant to this Court's Order Granting Preliminary Injunction, entered on September 3, 2019 (Doc. 38), Plaintiff was referred to Dr. Joos, an ear, nose, and throat specialist, for evaluation and treatment of an unresolved bilateral ear infection. Dr. Joos recommended a course of treatment and re-evaluation "in a couple of weeks…" if symptoms of pain and drainage persist. (Doc. 58-3). Plaintiff now seeks further treatment from Dr. Joos for ongoing symptoms of pain and drainage. (*Id*.). He also seeks reassignment to a different institutional medical provider until these issues are resolved. (*Id*.).

The Court construed Plaintiff's TRO Motion as a Motion for a TRO and/or Preliminary Injunction and ordered Defendants to respond by November 1, 2019. (Doc. 56). Defendant Santos filed a Response on October 30, 2019 (Doc. 58), and Plaintiff filed Replies/Supplements on November 1, 2019 and November 5, 2019 (Docs. 59 and 61).

1

For the following reasons, set forth herein, Plaintiff's Motion for Temporary Restraining Order (Doc. 55) is **GRANTED in part**; Plaintiff's request for follow-up care with Dr. Joos is granted, and his request for assignment to a different institutional medical provider is denied.

**Background**

Plaintiff is an inmate at Centralia Correctional Center ("Centralia"). He suffers from chronic bilateral ear infections. (Doc. 14). Antibiotic treatment caused him to develop thrush. (*Id*.). Centralia's physician (Dr. Santos) and health care unit administrator (Nurse Nalewajka) allegedly delayed or denied him proper medical care for these conditions. (*Id*. at p. 12). At screening, the Court allowed him to proceed with a single Eighth Amendment claim against both individuals (Count 1). (Doc. 15).

Plaintiff filed several motions for preliminary injunctive relief requiring the defendants to send him to an ENT for further evaluation and treatment of ongoing infection, drainage, and pain. (*See* Docs. 10, 12, 34). This Court granted his motions in an Order dated September 3, 2019, as follows:

> Pursuant to Federal Rules of Civil Procedure 65(a) and (d), Defendants are **HEREBY ORDERED** to schedule an appointment on Plaintiff's behalf with an ear, nose, and throat specialist ("ENT") for evaluation (and treatment if so recommended) of his bilateral ear infections, thrush, and related symptoms; said appointment to take place within **14 days** of the date of this Order.
>
> **DEFENDANTS ARE FURTHER ORDERED** to file a written notice advising the Court the date and time of Plaintiff's appointment with an ENT on or before September 17, 2019; Defendants shall advise the Court in the event of any change in the appointment date or time, indicating all steps taken to reschedule the appointment (with the same or alternative provider) and all steps taken to ensure compliance with this Order.
>
> **DEFENDANTS ARE FURTHER ORDERED** to file a written notice advising the Court . . . what, if any, diagnosis and treatment plan was recommended for Plaintiff and all steps taken to implement the plan for treatment of his chronic ear infections, thrush, and related symptoms within fourteen (14) days after Plaintiff's appointment with an ENT.

(Doc. 38, pp. 3-4). Defendants scheduled Plaintiff's appointment with an ENT specialist for September 30, 2019 and took steps to carry out the treatment plan. Plaintiff nevertheless maintains that he is being denied adequate medical treatment.

In his TRO Motion (Doc. 55) and Supplements (Docs. 59 and 61), Plaintiff asserts that Dr. Joos debrided both ears on September 30, 2019 and recommended a follow-up appointment if symptoms of pain and drainage persisted. (Doc. 55, p. 4). He alleges that during a visit with Dr. Santos on October 17, 2019, he complained of ongoing pain and drainage and that Dr. Santos probed his ears with a Q-tip and extracted blood and a "whitish-yellowish flaky discharge." (*Id*. at pp. 4, 7-8). When Plaintiff requested a follow-up appointment with Dr. Joos to address his ongoing symptoms, Dr. Santos denied his request and assured Plaintiff that he just had excessive ear wax and nothing more. (*Id*.).

On October 20, 2019, Plaintiff filed an emergency grievance complaining of ongoing pain and discharge from his ears and requesting a follow-up treatment with Dr. Joos. (*Id*. at pp. 7-8). The Warden agreed that the grievance presented an emergency and forwarded it to the health care unit for review. (*Id*. at pp. 5-6). However, the grievance was denied based on Dr. Santos' treatment of Plaintiff and a documented recommendation for follow-up care with the ENT in 6-8 weeks if symptoms persisted. (*Id*. at p. 5).

At an appointment with Dr. Santos on October 24, 2019, Plaintiff again complained of pain. (*Id*. at p. 3). Dr. Santos examined Plaintiff's ears and told him they looked "clean." (*Id*.). When Plaintiff requested another appointment with Dr. Joos, the request allegedly prompted Dr. Santos to become angry, ball his fists, and throw things across the room. (*Id*.). Plaintiff filed another grievance on October 24, 2019 that was also denied. (Doc. 61, pp. 3-4).

Plaintiff claims he continues to have pain and drainage in his ears but is being denied access to necessary follow-up care with the specialist, Dr. Joos (Doc. 55, p. 2). He seeks injunctive relief in the form of an order directing Defendants to arrange for a follow-up visit with Dr. Joos and treatment with a different institutional provider. (Docs. 55 and 61).

Defendant Santos argues that Plaintiff cannot satisfy the requirements for obtaining a TRO because he did not respond to Plaintiff's complaints with deliberate indifference; they merely disagree about Dr. Joos' diagnosis and treatment plan. (Doc. 58, pp. 2-4). He claims that following Plaintiff's visit with Dr. Joos on September 30, 2019, he examined Plaintiff's ears, saw no signs of infection, removed excess wax, and ordered medicine to treat his nasal congestion and pain. (*Id*. at p. 4). Dr. Santos also claims that Dr. Joos recommended a follow-up appointment in 6-8 weeks to address persistent symptoms of pain and drainage, and Plaintiff filed his TRO Motion before this time period expired. (*Id*.). He asserts that no follow-up appointment is necessary, and he can provide any additional care that Plaintiff needs. (*Id*. at pp. 6-7).

## **Discussion**

As previously noted, the Court construes Plaintiff's request as a motion for a TRO and/or a preliminary injunction. To obtain either form of injunctive relief, Plaintiff must demonstrate that (1) his underlying case has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) he will suffer irreparable harm without the relief. *Merritte v. Kessel*, 561 F. App'x 546, 548 (7th Cir. 2014) (citing *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007)). If those elements are established, the Court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.* (citations omitted).

The above-referenced factors weigh in favor of granting preliminary injunctive relief to Plaintiff in the form of follow-up care with Dr. Joos. This Court has previously concluded that

Plaintiff has established a "better than negligible" chance of succeeding on the merits of his claim(s). (Doc. 38) (citing *Valencia v. City of Springfield, Ill.*, 883 F.3d 959, 966 (7th Cir. 2018) (citation omitted)). Moreover, the allegations and medical records suggest an ongoing violation of Plaintiff's constitutional rights. (Docs. 55, 58, and 61). Defendant Santos met with Plaintiff on two occasions following his visit with Dr. Joos and treated Plaintiff's persistent complaints of significant pain (rated a 7 or 8 out of 10) and drainage (including blood and "white-yellowish" discharge) the same way--by probing his ears with Q-tips and ordering more ibuprofen. (Doc. 58-2, pp. 5-8). Neither course of treatment resolved the symptoms. These facts do not support Dr. Santos' characterization of the events as a "mere disagreement" in the proper course of treatment. *Snipes v. DeTella*, 95 F.3d 586 (7th Cir. 2012) (citations omitted) (mere disagreement with the course of treatment does not state a claim of deliberate indifference).

In his treatment plan dated September 30, 2019, Dr. Joos explicitly recommended reevaluation *in two weeks* if Plaintiff continued to experience symptoms of drainage and pain:

> Assessment and plan:
> 1. Improving bilateral otitis externa. After debriding all of the thick wax in the ear canals, the external auditory canal skin actually looks to be in fairly good condition with minimal inflammation. We will go ahead and provide Lotrimin drops recommendation to be used twice a day for 2 weeks. If the patient still has ongoing otorrhea or otalgia he could be reevaluated in the couple of weeks if his facility prefers.
> 2. Eustachian tube dysfunction. I would recommend fluticasone and possible Claritin on a daily basis to optimize rhinitis leading to improve eustachian tube function, the patient can also Valsalva to improve clearance any time. He voices agreement and understanding to these recommendations

(Doc. 58-2, p. 14). Dr. Santos' insistence that Joos recommended a follow-up appointment in 6-8 weeks when his records clearly show his recommendation that Plaintiff follow-up with him "in a couple of weeks" if his symptoms persist is significant and troubling to the Court. More than a month has passed since Plaintiff met with Dr. Joos, and his pain and drainage are unresolved. The balance of equities tips in Plaintiff's favor. *See Hoban v. Wexford Health Sources, Inc.*, 731 F. App'x 530, 531-32 (7th Cir. 2018).

Plaintiff is certainly at risk for suffering irreparable harm from an ongoing and painful infection and has no adequate remedy at law. Although the Court gives substantial weight to any impact a TRO or preliminary injunction may have on the public interest, particularly when it comes to the administration of prisons and interference with a prison physician's medical judgment, the facts presented weigh in favor of granting Plaintiff's request for further evaluation and treatment with Dr. Joos.

Plaintiff's request for further evaluation with Dr. Joos comports with the Prison Litigation Reform Act's requirement that injunctive relief be "narrowly drawn" and "extend no further than necessary to correct the harm." 18 U.S.C. § 3626(a). His request for reassignment to a different institutional provider does not. Accordingly, **the Court issues the following SECOND PRELIMINARY INJUNCTION:**

Pursuant to Federal Rules of Civil Procedure 65(a) and (d), Defendants are **HEREBY ORDERED** to schedule an appointment for Plaintiff with Dr. Joos **for further evaluation and treatment, if so recommended**, of his unresolved bilateral ear infections, pain, and drainage; said appointment to take place within **21 days** of the date of this Order or sooner if the ENT specialist's schedule permits.

**DEFENDANTS ARE FURTHER ORDERED** to file a written notice on or before November 21, 2019, advising the Court the date and time of Plaintiff's appointment with Dr. Joos; Defendants shall advise the Court in the event of any change in the appointment date or time, indicating all steps taken to reschedule the appointment (with the same or alternative provider) and all steps taken to ensure compliance with this Order.

**DEFENDANTS ARE FURTHER ORDERED** to file a written notice (attaching all relevant medical records and documentation) within fourteen (14) days after Plaintiff's

appointment with Dr. Joos, advising the Court of Dr. Joos' diagnosis and recommended treatment plan for Plaintiff and all steps taken to implement the plan for treatment of his chronic ear infections, thrush, and related symptoms.

**IT IS SO ORDERED.**

**DATED: 11/7/2019**                             s/ Staci M. Yandle
                                                 **United States District Judge**