IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MANITH VILAYHONG | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:19-CV-00748-MAB |
| | ) |
| VENERIO SANTOS, ET AL., | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendant Meeks's motion, and supporting memorandum, for summary judgment (Docs. 126, 127). For the reasons set forth below, the motion is **DENIED.**

## PROCEDURAL BACKGROUND

Plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983 on July 11, 2019, for deprivations of his constitutional rights while incarcerated at Centralia Correctional Center ("Centralia") (Docs. 1, 14, 15). Plaintiff claims that he was denied medical treatment in violation of his constitutional rights. *Id.* Plaintiff filed his first amended complaint on August 7, 2019 (Doc. 14).

The Court conducted a threshold review of the first amended complaint, pursuant to 28 U.S.C. § 1915A, and allowed Plaintiff to proceed on one Eighth Amendment deliberate indifference claim against Defendants Santos and Nalewajka for delaying

Plaintiff adequate medical care for his chronic bilateral ear infections and thrush in 2019 (Doc. 15, p. 4).

Along with his complaint, Plaintiff filed a motion for preliminary injunction on August 2, 2019 (Doc. 10). The Court held a hearing on the matter and granted Plaintiff's motion for preliminary injunction on September 3, 2019 (Doc. 38). On October 24, 2019, Plaintiff filed a motion for temporary restraining order, detailing that Defendant Santos refused to refer him to an outside ENT specialist (among other complaints) (Doc. 55). This motion was granted on November 7, 2019 (Doc. 62).

Plaintiff was appointed counsel on January 17, 2020 (Doc. 89). Plaintiff's counsel filed a motion for leave to file the second amended complaint, which was granted on June 2, 2020 (Docs. 97, 98). On June 3, 2020, Plaintiff filed his second amended complaint in which he added Defendants Steve Meeks and Wexford Health Sources, Inc. (Doc. 99). In this second amended complaint, Plaintiff asserts that Defendant Meeks interfered with, delayed, and/or denied nursing and medical diagnostic and treatment services to Plaintiff. Additionally, Plaintiff asserts that Defendants Meeks allowed ineffective treatments to persist, all in violation of Plaintiff's Eighth Amendment rights (Doc. 99, p. 7).

The other Defendants withdrew the affirmative defense of exhaustion of administrative remedies (Docs. 74, 75), while Defendant Meeks filed his motion, and supporting memoranda, for summary judgment on the issue of exhaustion on March 8, 2021 (Docs. 126, 127). In his motion, Defendant Meeks argues that Plaintiff has not exhausted his administrative remedies prior to filing his lawsuit. Plaintiff filed his

response on April 14, 2021 (Docs. 130, 131, 132). Defendant Meeks did not file a reply brief or otherwise address the additional facts asserted by Plaintiff or the evidence he submitted in support thereof. Having closely reviewed the briefs and evidence submitted by both parties, the Court determined there were no disputed issues of material fact and therefore no hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) was necessary.

## FACTUAL BACKGROUND

Plaintiff is an inmate within the Illinois Department of Corrections ("IDOC") and is currently incarcerated at Centralia, where the events at issue took place (Doc. 99). Defendant Meeks is a medical doctor employed by the IDOC to provide medical treatment to incarcerated individuals (*Id.* at 2).[1]

On or around January 17, 2019, Plaintiff complained to Defendants about a bilateral ear condition (*Id.* at 3). Plaintiff alleges in his complaint that despite acknowledging the seriousness of Plaintiff's complaint and condition, Defendants ignored his condition for around 71 days. *Id.* When Defendants finally provided care to him, they discovered he had an ear infection, but did not begin treating this infection until April 4, 2019. *Id.* At that time, they prescribed several rounds of antibiotics that were

---

[1] The other remaining Defendants in this case are Defendants Nalewajka, Wexford Health Sources, Inc., and Santos. Defendant Wexford Health Sources, Inc., did not file a motion for summary judgment on the issue of exhaustion, while Defendants Nalewajka and Santos withdrew the affirmative defense (Docs. 74, 75). Accordingly, the Court will not examine this issue as it applies to these Defendants, although their names and descriptions of their alleged actions are contained herein. Defendants Santos and Nalewajka are medical professionals who treat incarcerated individuals (Doc. 99, pp. 2-3).

ineffective and caused Plaintiff to develop thrush.[2] *Id.* Even with antibiotics, Plaintiff's conditions did not improve. In July 2019, Plaintiff was examined by medical professionals and it was determined that he was still suffering from ear infections in both ears and thrush (*Id.* at 4). Plaintiff was referred to an ENT specialist to address the continuing infection. *Id.*

Plaintiff alleges that Defendant Santos canceled this referral and told him to "just deal" with his symptoms, including pain, hearing loss, and distortions. *Id.* Plaintiff was transferred to Centralia's Healthcare Unit for intravenous treatment. As a result of this Court's September 3, 2019 Order granting Plaintiff's request for a preliminary injunction, Plaintiff was also referred to an ENT specialist who prescribed a course of treatment. *Id.* On October 20, 2019, Defendant Santos swabbed Plaintiff's ear and found a discolored flaky discharge. Plaintiff requested another follow-up with the ENT specialist, but Defendant Santos denied his request (*Id.* at 5). That same day, Plaintiff filed an emergency grievance complaining of ongoing pain and discharge from his ears and requesting a follow-up ENT appointment. Centralia's Warden agreed that the grievance was an emergency and forwarded it to the Healthcare Unit for review, where it was denied. *Id.*

Plaintiff was again examined by Defendant Santos four days later on October 24, 2019. Defendant Santos stated that Plaintiff's ears looked "clean." Even so, Plaintiff requested a follow-up appointment with the ENT specialist, which Defendant Santos

---

[2] Thrush is the overgrowth of the fungus candida albicans, which causes white lesions usually on the tongue or inner cheeks of the mouth. *See Oral Thrush*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/oral-thrush/symptoms-causes/syc-20353533 (last visited November 1, 2021).

denied. On November 7, 2019, this Court granted Plaintiff's preliminary injunction, which resulted in Plaintiff being referred to an ENT specialist for treatment. Even after this Order, Plaintiff contends Defendants have interfered with, denied, and delayed his medical treatment. *Id.*

Defendant Meeks argues that the ARB and institution's records indicate that Plaintiff did not send *any* grievances to the ARB or even file any internally at Centralia[3] regarding allegations against Defendant Meeks (Doc. 127, p. 2). Defendant Meeks submitted the IGRV Inmate History log, which is the ARB's tracker for grievances it receives, and it appears that Plaintiff submitted a series of grievances dating back to January 20, 2012 (Doc. 127-1, p. 1). This log stops at August 1, 2019.[4] *Id.* Additionally, Defendant Meeks submitted Plaintiff's grievance records from Centralia, which include copies of grievances dated January 24, 2019, April 24, 2019, April 28, 2019, April 29, 2019, June 26, 2019, July 1, 2019, and August 6, 2019 (Doc. 127-2). The record does not contain any grievances dated beyond this August 6, 2019 grievance.

Plaintiff disagrees and argues that the record as a whole includes a series of grievances he claims relate to Defendant Meeks. In Plaintiff's August 6, 2019 grievance, he complains of ear pain and dizziness, and details that Defendants Santos and

---

[3] Defendant Meeks also contends that Plaintiff did not file any grievances related to him at Menard, but then points to Plaintiff's Centralia records (Doc. 127, p. 2). The Court believes this is a simple error, as it appears as if all of the claims in the present matter pertain to events that occurred at Centralia.

[4] Defendant Meeks does not explain why the log stops at August 1, 2019, and whether this means Plaintiff did not file any additional grievances with the ARB after this date, or if he only included the log up until this date, as Plaintiff filed his original complaint on July 11, 2019.

Nalewajka have not been providing adequate treatment (Doc. 34-1, pp. 1-2).[5] Plaintiff marked this grievance as an emergency, stating he needed a follow-up appointment and certain accommodations (such as a bottom bunk) because of his ear pain and dizziness (*Id.* at pp. 4-5). This grievance was reviewed by Plaintiff's grievance officer and the CAO at Centralia on or around August 12, 2019 (*Id.* at p. 5). They determined that Plaintiff's issues were being appropriately addressed at the prison level, so Plaintiff filled out the portion of the form labeled "Offender's Appeal to the Director" and included a letter he sent, with this grievance, to the ARB to appeal (*Id.* at pp. 5-8). This letter is not included in the records submitted by Defendant Meeks, and Defendant Meeks did not file a reply brief; therefore, he did not dispute Plaintiff's assertions regarding this grievance or offer any evidence to rebut them.

Additionally, Plaintiff points to a second grievance he wrote on or around September 8, 2019. In this grievance, Plaintiff details ongoing issues with his medical treatment at Centralia. He mentions that after the Court issued the preliminary injunction, "It would be reasonable to conclude that the IDOC Director Rob Jeffreys, IDOC Medical Director Steve Meeks, C.C.C. Head Warden Fatheree…Lana Nalewajka…, and Physician Dr. Santos C.C.C. Medical Director, and Wexford Health Sources should all be on the same page with one another and in close communications with their attorneys" (Doc. 44, p. 5). Plaintiff filed this grievance as an emergency, so it was sent directly to the Warden's office, who agreed on September 8, 2019 that this grievance

---

[5] A version of this grievance was also submitted by Defendant Meeks in Plaintiff's Centralia records (*See* Doc. 127-2, pp. 33-38).

should be reviewed as an emergency (*Id.* at p. 4). This grievance was ultimately denied (*Id.* at p. 6). Plaintiff says he appealed this grievance to the ARB and, as support, provided his mail log to the Court. In this mail log, there are five mail entries for "outgoing level/priv" mail, including one entry that shows Plaintiff sent mail to the ARB in Springfield, Illinois on October 10, 2019 (Doc. 132-1, p. 1). Defendant Meeks did not file a reply brief or otherwise dispute Plaintiff's assertions regarding this grievance.

Plaintiff points to a third grievance, dated October 25, 2019 (Doc. 61, p. 5). In this grievance, he describes that on October 24, 2019, during a follow-up appointment with Defendant Santos, he became hostile and refused Plaintiff appropriate follow-up treatment. Plaintiff argues he is being retaliated against for filing his lawsuit (*Id.* at pp. 5-6). Plaintiff filed this grievance as an emergency and it was reviewed and denied by the CAO and Plaintiff's grievance officer on November 1, 2019 (*Id.* at p. 3). Plaintiff filled out the ARB appeal section on the grievance form on November 5, 2019 (*Id.*). Defendant Meeks did not file a reply brief and therefore did not dispute Plaintiff's assertions regarding this grievance or offer any evidence to rebut them.

## LEGAL STANDARDS

*Summary Judgment*

Summary judgment is proper only if the movant shows that there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In making that determination, the court must view the evidence in the light most favorable to, and draw all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Courts generally cannot resolve factual disputes on a motion for summary judgment. *E.g., Tolan v. Cotton*, 572 U.S. 650, 656, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Wagoner v. Lemmon*, 778 F.3d 586, 590 (7th Cir. 2015) (citing *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008)). *Accord Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014). However, where there is no disputed issue of fact, no hearing is necessary.

*Exhaustion*

The Prison Litigation Reform Act ("PLRA") provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011)). Exhaustion is an affirmative defense, which the defendants bear the burden of proving. *Pavey*, 663 F.3d at 903 (citations omitted).

In order for a prisoner to properly exhaust his or her administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozzo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006). As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. ILL. ADMIN. CODE, tit. 20, § 504.800, *et seq.* (2017). The regulations first require an inmate to

attempt to resolve the dispute through his or her counselor. *Id.* at § 504.810(a).[6] If the counselor is unable to resolve the grievance, it is sent to the grievance officer, who reports his or her findings and recommendations in writing to the Chief Administrative Officer (the warden). *Id. at* § 504.830(e). The warden then provides the inmate with a written decision on the grievance. *Id.* If the inmate is not satisfied with the warden's decision, he or she has thirty days to appeal to the Director of the IDOC by sending the grievance to the Administrative Review Board ("ARB"). *Id.* at § 504.850(a). The ARB submits a written report of its findings and recommendations to the Director, who then makes a final determination "within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances." *Id.* at § 504.850(d), (e).

An inmate may also request that a grievance be handled as an emergency by forwarding the grievance directly to the warden. 20 ILL. ADMIN. CODE § 504.840 (2017). If the warden determines that "there is a substantial risk of imminent personal injury or other serious or irreparable harm to the [inmate]," then the grievance is handled on an emergency basis, meaning the warden will expedite processing of the grievance and respond to the inmate, indicating what action shall be or has been taken. *Id.* On the other hand, if the warden determines that the grievance should not be handled on an emergency basis, the inmate is notified in writing that he "may resubmit the grievance as non-emergent, in accordance with the standard grievance process." *Id.*

Though the Seventh Circuit requires strict adherence to the exhaustion

---

[6] There are exceptions to this rule. 20 ILL. ADMIN. CODE § 504.810(a), 504.870 (2017).

requirement, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. §1983 must first exhaust all administrative remedies. *See* 42 U.S.C §1997e (a); *Pavey v. Conley*, 544 F.3d, 739, 740 (7th Cir. 2008). Defendant Meeks argues, simply, that there are no grievances in the record that were fully exhausted that name him or describe his actions (Doc. 127, p. 4). Plaintiff points to three grievances in the record that he argues relate to Defendant Meeks, including one that does include his name. He also argues these grievances were fully exhausted, including the grievance that included Defendant Meeks's name.

The Illinois Administrative Code mandates that grievances include the name, or at least a description, of the persons involved in the complaint, ILL. ADMIN. CODE, tit. 20 § 504.810(c). The regulations instruct that grievances should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." ILL. ADMIN. CODE, tit. 20, § 504.810(c). Additionally, the Seventh Circuit indicates that an inmate should "articulat[e] what facts the prison could reasonably

expect from a prisoner *in his position.*" *Glick v. Walker*, No. 09-2472, 385 Fed. Appx. 579, 2010 U.S. App. LEXIS 14361, at *6-7 (7th Cir. July 13, 2010).

Grievances are intended to give prison officials notice of a problem and a chance to correct it before they are subjected to a lawsuit; grievances are not intended to put an individual defendant on notice of a claim against him. *Jones v. Bock*, 549 U.S. 199, 219 (2007) ("We have identified the benefits of exhaustion to include allowing a prison to address complaints about the program it administers before being subjected to suit . . . . {E]arly notice to those who might later be sued . . . has not been through to be one of the leading purposes of the exhaustion requirement."). While not required to name a specific Defendant, Plaintiff did just that in his September 8, 2019 grievance (labeled E-19-9-29), as well as described issues with his ongoing care for his ear issues. In this grievance, Plaintiff details that he is "document[ing] a complaint about an undue delay in scheduling of my court ordered (ENT) appointment, resulting in prolonged suffering, pain, and continued risk of imminent and irreparable harm" (Doc. 132-3, p. 4). Later in the grievance, Plaintiff identifies Defendant Meeks by name and describes that because the Court granted his motion for preliminary injunction, Defendant Meeks should be aware of the aforementioned ongoing medical issues (*Id.* at p. 5). Defendant Meeks's argument that there are no grievances in the record naming him, or describing behavior attributable to him, is simply incorrect.

Therefore, the remaining question before the Court is whether this grievance was appropriately filed and appealed to the ARB.[7] Because, if so, the Court does not necessarily need to examine whether the other two grievances Plaintiff highlights as support were fully exhausted. Plaintiff filed the September 8, 2019 grievance as an emergency, which means it was sent directly to the CAO's office for review. The CAO reviewed the grievance on September 8, 2019 and agreed that it should be expedited (Doc. 132-2, p. 4). The grievance officer reviewed Plaintiff's grievance on September 11, 2019, who detailed that this grievance was sent to the IDOC Medical Director's Office and that the Healthcare Unit was treating Plaintiff's condition internally as well as referred Plaintiff out to the ENT specialist (*Id.* at p. 6). The grievance officer recommended that the grievance be denied and the CAO concurred on or around September 13, 2019 (*Id.* at pp. 5-6). So far, this grievance went through the appropriate channels internally at Centralia for an emergency grievance.

Defendant Meeks claims this grievance never made it to the ARB and, therefore, was not properly exhausted. Plaintiff says that he placed this grievance in the prison mail system on October 10, 2019, as indicated by his official mail log from Centralia, and within the thirty-day time period in which the ARB must receive the appeal (Doc. 132-1, p. 1). He argues, as a prisoner, he had "no choice but to rely" on the prison mail system to

---

[7] While Plaintiff filed this lawsuit on July 11, 2019, Defendant Meeks was not added as a Defendant until June 3, 2020 (Doc. 99). The Seventh Circuit has allowed a prisoner to exhaust his administrative remedies while a lawsuit was pending where an eventual amended complaint contained new claims that were not included in the original complaint, and the new claims were exhausted before the filing of the amended complaint. *See Barnes v. Briley*, 420 F.3d 673, 677-678 (7th Cir. 2005).

deliver this mail (Doc. 132, p. 3). Indeed, Plaintiff submitted documentary evidence to support his assertion that he submitted outgoing mail to the ARB in Springfield, Illinois on October 10, 2019 (Doc. 132-1, p.1). Defendant Meeks was unresponsive to Plaintiff's assertion and the supporting evidence. As a result, the Court deems these facts undisputed for the purposes of this Order pursuant to Federal Rule of Civil Procedure 56(e). Exhaustion is an affirmative defense, which the *defendants bear the burden of proving*. *Pavey*, 663 F.3d at 903 (citations omitted).

      The record clearly shows that Plaintiff sent his September 8, 2019 grievance to the ARB within the thirty-day deadline. The Court also notes the IGRV log Defendant Meeks submitted into the record only includes grievances from 2012 through August 1, 2019 (Doc. 127-1). The three grievances, including this September 8, 2019 grievance, that Plaintiff argues were appropriately exhausted were filed after the end of Defendant Meeks's submitted ARB records and are nowhere to be found in Defendant Meeks's submissions. Defendant Meeks has failed to counter any of Plaintiff's arguments that Plaintiff did, in fact, submit his September 8, 2019 grievance to the ARB. The Court declines to make Defendant Meeks's arguments for him. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 860 (7th Cir. 2017) (citing *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties.")). As such, the Court finds that Defendant Meeks has failed to carry his burden. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("Prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative

misconduct to prevent a prisoner from exhausting.").

## CONCLUSION

Defendant's motion for summary judgment is **DENIED**. The parties are already engaged in discovery and Defendant Meeks is reminded that his dispositive motion on the merits of Plaintiff's claims is due on or before November 17, 2021 (Doc. 145).

**IT IS SO ORDERED.**

**DATED: November 3, 2021**

> s/   Mark A. Beatty
> **MARK A. BEATTY**
> **United States Magistrate Judge**